UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                         Case # 18-CR-26-FPG

v.

                                                         DECISION AND ORDER

DONTRELL R. WISE,

                        Defendant.
_____

## INTRODUCTION

On June 20, 2018, the Grand Jury returned the Second Superseding Indictment, ECF No. 68, which charged Defendant Dontrell R. Wise with three Counts: Count 1, conspiracy to possess with intent to distribute heroin, butyryl fentanyl, fentanyl, cocaine, and cocaine base; Count 2, possession of butyryl fentanyl with intent to distribute; and Count 3, distribution of fentanyl causing death.

Trial began on October 26, 2018. ECF No. 163. After hearing from over thirty witnesses, the jury returned a verdict on November 8, 2018 finding Dontrell Wise guilty on all three Counts. ECF No. 175. On December 21, 2018, Dontrell Wise moved for a judgment of acquittal on all three Counts under Federal Rule of Criminal Procedure 29. ECF No. 183. The Government responded, and Dontrell Wise replied. ECF Nos. 195, 199. For the reasons that follow, Dontrell Wise's motion is DENIED.

## LEGAL STANDARD

Under Rule 29, the Court may "set aside [a guilty] verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Rule 29 erects a formidable barrier between the defendant and a judgment of

acquittal. *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) ("[A] defendant challenging the sufficiency of the evidence that led to his conviction at trial 'bears a heavy burden,' as the standard of review is 'exceedingly deferential[.]'"(citations omitted)). The Court must uphold the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Barrett*, 848 F.3d 524, 534 (2d Cir. 2017) (quoting *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006)). In other words, the Court "may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* The Court must consider the evidence in totality, not in isolation, *United States v. Zhou*, 428 F.3d 361, 369-70 (2d Cir. 2005), and "defer to the jury's determination of witness credibility, the weight of the evidence, and the reasonable inferences [it drew] from the evidence," *Barrett*, 848 F.3d at 534.

"[T]he jury's verdict may rest entirely on circumstantial evidence," *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003), and the Government "need not exclude every reasonable hypothesis other than that of guilt" when it presents its case, *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citation and quotation marks omitted). Indeed, in a case where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Spoor*, 904 F.3d 141, 148 (2d Cir. 2018) (quoting *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013)) (internal quotation marks omitted).

## BACKGROUND

The testimony and evidence from this trial can be organized into three categories: (1) the traffic stop of Dontrell Wise and Defendant Jerell Weathersby on November 9, 2017, (2) Dontrell

Wise distributing drugs to Brittney Ridgeway, who then distributed them to Amanda Jarczyk and her friend Stephanie Oquendo on November 23 and 24, 2017 and Amanda Jarczyk's death on the 24th, and (3) Dontrell Wise's drug distribution in Bradford, Pennsylvania between September 2015 and January 2018.

**I.     Traffic Stop on November 9, 2017**

On November 9, 2017, Buffalo Police Department Officer Mitchell Thomas observed a red Ford Explorer with tinted windows drive by him.  He noticed a strong odor of marijuana coming from the car and conducted a traffic stop.

Officer Thomas approached the car and saw Dontrell Wise in the driver seat and Jerell Weathersby in the passenger seat next to him.  After questioning them, Officer Thomas and his partner discovered that Dontrell Wise had $9,000 in his pocket, while Jerell Weathersby had a bag containing 5 grams of butyryl fentanyl on his person.  The officers arrested Jerell Weathersby and released Dontrell Wise.

**II.    Drug Distribution on November 23 and 24, 2017 and Amanda Jarczyk's Death**

On or about November 21 or 22, 2017, Brittney Ridgeway purchased 5 grams of what she thought to be heroin from Dontrell Wise.  He provided an additional 5 grams for free.  On November 23, Amanda Jarczyk contacted Brittney Ridgeway via Facebook Messenger and asked Brittney Ridgeway for a bundle, which contained ten bags of heroin.  They met at a predetermined location, Amanda Jarczyk paid Brittney Ridgeway, and she provided the bundle to her.

The next day, Amanda Jarczyk texted Brittney Ridgeway and requested another bundle of heroin.  Brittney Ridgeway picked up Amanda Jarczyk and Stephanie Oquendo and drove them to a Sunoco gas station where they withdrew cash to pay her.  She then drove them to 1371 Losson Road in Cheektowaga, the house where Amanda Jarczyk died.

Later that day, law enforcement was called and responded to the house. Cheektowaga Police Officer Timothy Szymanski conducted a sweep of the house and found Amanda Jarczyk's body in a bedroom and a small, red-and-white-checkered baggie containing a white, powdery substance in the kitchen. The substance was later tested and found to contain fentanyl.

Erie County Medical Examiner Scott F. LaPoint, M.D., performed an autopsy on Amanda Jarczyk. Based on his examination and the toxicology report, he determined the but-for cause of death to be a fentanyl overdose. The toxicology screen found a lethal level of fentanyl and non-lethal levels of alprazolam (Xanax), citalopram (Celexa), gabapentin (Neurontin), and alcohol ethanol, or drinking alcohol, in Amanda Jarczyk's body.

### III. Drug Distribution in Bradford, Pennsylvania

Between September 2015 and January 2018, Angel Fenton, Heather Metcalf, and Reba Williams all interacted with Dontrell Wise in Bradford, Pennsylvania. Angel Fenton observed Dontrell Wise and Jerell Weathersby package cocaine and cocaine base and sold both for Dontrell Wise. Heather Metcalf purchased cocaine base from Dontrell Wise but declined to purchase heroin when he offered it to her. Reba Williams distributed cocaine base for Dontrell Wise and observed the drug operation he ran in Bradford.

**DISCUSSION**

The Court begins its analysis with the language in the Second Superseding Indictment.

### I. Count 1 – Conspiracy to Possess with Intent to Distribute Heroin, Butyryl Fentanyl, Fentanyl, Cocaine, and Cocaine Base

Count 1 of the Indictment reads as follows:

> Beginning in or about September 2015, the exact date being unknown, and continuing until on or about January 16, 2018, in the Western District of New York, and elsewhere, the defendant, DONTRELL R. WISE a/k/a Trell, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is:

a. to possess with intent to distribute, and to distribute, heroin and butyryl fentanyl, both Schedule I controlled substances, and fentanyl, cocaine, and cocaine base, all Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

b. to possess with intent to distribute, and to distribute, fentanyl, a Schedule II controlled substance, and the death of [Amanda Jarczyk], a person known to the Grand Jury, resulted from the use of such substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

All in violation of Title 21, United States Code, Section 846.

Evidence supports a § 841(a)(1) conspiracy under § 846 where it shows "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; [] (3) that the defendant intentionally joined the conspiracy," *Barrett*, 848 F.3d at 534, and (4) that he "acted with the specific intent that the [controlled substance] be distributed[,]" *United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010). Importantly, to meet the knowledge requirement, the evidence need only support a finding that Dontrell Wise knew he possessed a controlled substance, "even if he did not know which substance it was." *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015).

Through his attorney Robert Ross Fogg, Esq., Dontrell Wise makes a variety of arguments against his conviction under Count 1. The bulk of them question the existence of his conspiracy with Brittney Ridgeway to possess fentanyl with intent to distribute it resulting in Amanda Jarczyk's death. Next, he challenges the conspiracy with Jerell Weathersby to possess and distribute butyryl fentanyl. Finally, he attacks the conspiracy to possess and distribute heroin, cocaine, and cocaine base in Bradford, Pennsylvania. The Court addresses each in turn.

### A. Conspiracy to Possess Fentanyl with Intent to Distribute It Causing Amanda Jarczyk's Death

Dontrell Wise's first contends that Dr. LaPoint gave conflicting testimony about which drug caused Amanda Jarczyk's death. The Court must defer to the jury's credibility determinations and inferences. But even if that was not required, Dr. LaPoint testified that fentanyl was the but-for cause of Amanda Jarczyk's death based on his examination and the toxicology screen. Consequently, the evidence supports that finding by the jury.

Dontrell Wise next argues that the "buyer-seller" relationship between him and Brittney Ridgeway is insufficient to establish a conspiracy. *See Untied States v. Rojas*, 617 F.3d 669, 674 (2d Cir. 2010) ("[A] buyer-seller relationship, without more, is insufficient to establish a conspiracy." (quotation marks and citation omitted)). The amount of drugs Dontrell Wise sold Brittney Ridgeway, however, demonstrates more than a buyer-seller relationship. Brittney Ridgeway said that she received 10 grams from Dontrell Wise on November 21 or 22 and 5 grams from him on three or four other occasions in 2017. Those amounts are consistent with distribution, not personal use. The jury could therefore reasonably infer a conspiracy between Dontrell Wise and Brittney Ridgeway. *See United States v. Valencia*, 100 F. App'x 17, 17 (2d Cir. 2004) (summary order) (finding that the "buyer-seller rule" did not apply where the defendant possessed a "wholesale quantity of cocaine").

Dontrell then contends that the connection between the drugs he distributed and Amanda Jarczyk's death is too tenuous. The trial evidence, however, draws a direct line from his drugs to Amanda Jarczyk. Brittney Ridgeway testified that on November 21 or 22, she purchased what she thought to be heroin from Dontrell Wise and then distributed it to Amanda Jarczyk and Stephanie Oquendo on November 23 and 24. Brittney Ridgeway testified that the red-and-white-checkered baggies in which she packaged Dontrell Wise's drugs were identical to the baggie found in the

kitchen at 1371 Losson Road. That baggie contained fentanyl, the controlled substance that caused Amanda Jarczyk's death.

A rational jury could also infer that Amanda Jarczyk only had access to the drugs she received from Brittney Ridgeway, which came from Dontrell Wise. Through analysis done on Amanda Jarczyk's phone, the Government showed that she contacted Brittney Ridgeway for drugs because her previously-used source—Defendant Lemario Jones, also known as Pyzon—was not responding to her. A rational jury could draw the inference that Amanda Jarczyk contacted Brittney Ridgeway and no other dealers on the 23rd and 24th. Moreover, Brittney Ridgeway testified that she received 10 grams of purported heroin from Dontrell Wise and not from another dealer. Amanda Jarczyk then purchased a bundle on the 23rd and requested another bundle for Stephanie Oquendo on the 24th. Neither Amanda Jarczyk nor Stephanie Oquendo had access to a car, so Brittney Ridgeway picked them up, brought them to Sunoco to withdraw money for the drugs, and dropped them off at 1371 Losson Road. Therefore, a rational jury could conclude that Amanda Jarczyk received Dontrell Wise's drugs twice—once before the day she died and again on the day she died—and that when she was dropped off at 1371 Losson Road she had no access to transportation.

Some evidence blurs the connection between Dontrell Wise and Amanda Jarczyk's death. Brittney Ridgeway admitted on cross-examination that she could not confirm that the baggie from the kitchen was hers or that it contained drugs from Dontrell Wise. She also testified that she believed the drugs Dontrell Wise gave her on the 21st and 22nd were heroin and that she usually purchased heroin from Dontrell Wise. No heroin was found in the baggie or in Amanda Jarczyk's system. Testing conducted on both found fentanyl[1].

---

[1] Amanda Jarczyk's body contained a lethal level of fentanyl, therapeutic levels of three drugs—alprazolam, citalopram, and gabapentin—and drinking alcohol. There was no heroin in her system.

The Court addressed a similar question in a case flagged[2] by Dontrell Wise: *United States v. Tessina*. At Francis Tessina's sentencing, the Government moved for an 841(b)(1)(C) enhancement. *United States v. Tessina*, No. 15-CR-130, 2017 WL 6345400, at *9-10 (W.D.N.Y. Dec. 12, 2017) (Vilardo, J.). The Court had to determine, by a preponderance of the evidence, whether heroin distributed by Tessina was the but-for cause of death of James Forness. *Id.* The facts were similar to this case: Tessina sold what he thought to be heroin mixed with fentanyl to John Haak, Haak sold the heroin to Forness, and Forness later died of a fentanyl overdose. *Id.* at *10.

There are some key differences between *Tessina* and this case. Tessina's heroin was tested after law enforcement conducted controlled buys the week after Forness's death. *Id.* The tests confirmed that the drugs contained both heroin and fentanyl. *Id.* Haak also testified that he purchased the drugs from another individual—Mark Schukraft—who in turn purchased them from Tessina. *Id.* at *11. Haak also said that he "usually" purchased drugs from Tessina, not that Tessina definitively distributed the drugs to him. *Id.* Finally, Tessina usually sold drugs in a plastic bag, but no packaging was found at Forness's house. *Id.*

The Court noted that the decision was a "close call" and found that it was more likely than not that Tessina's drugs were *not* the but-for cause of Forness's death. *Id.* at *12. The Court emphasized that Tessina's drugs contained heroin and fentanyl, while Forness died from a fentanyl overdose. *Id.* at *11-12. No heroin was found in his body. *Id.*

---

[2] Dontrell Wise also holds out *Burrage v. United States*, 571 U.S. 204, 210-211 (2014) as a case that supports his motion. *Burrage* concluded that a defendant is not subject to sentencing enhancements under § 841(b)(1)(C) unless the drugs he distributed were a sufficiently independent cause of the victim's death. There is no evidence showing that any controlled substance other than fentanyl was the but-for cause of Amanda Jarczyk's death, so *Burrage* does not apply.

Here, there is evidence that supports the verdict that was not present in *Tessina*. First, while no packaging linked Tessina to Forness's death, a reasonable jury could trace Dontrell Wise's drugs to the red-and-white-checkered baggies used to package the substance he sold to Brittney Ridgeway and that she then sold to Amanda Jarczyk. The connections between the three are circumstantial, but a reasonable jury could find that they exist. Second, there is no independent verification that Dontrell Wise's drugs were a mixture of heroin and fentanyl. There is circumstantial evidence to show that they were pure fentanyl—the testing on the baggie. Most importantly, Brittney Ridgeway stated unequivocally that the drugs she gave to Amanda Jarczyk and Stephanie Oquendo came from Dontrell Wise.

### B. Possession of Butyryl Fentanyl with Intent to Distribute It with Jerell Weathersby

Next, Dontrell Wise targets the traffic stop on November 9. He argues that his mere association with Jerell Weathersby, who possessed a distributable amount of butyryl fentanyl, cannot establish his possession with intent to distribute it. The facts belie his argument. Jerell Weathersby possessed 5 grams of butyryl fentanyl, an amount also consistent with distribution; both Dontrell Wise and Jerell Weathersby were in a rental car, which drug distributors frequently use to avoid detection; Dontrell Wise had approximately $9,000 on him, also consistent with drug distribution; Angel Fenton observed Dontrell Wise and Jerell Weathersby distributing cocaine and cocaine base together in Bradford, Pennsylvania; and testimony revealed that Dontrell Wise had no plausible explanation for possessing that amount of cash. He told his parole officer he was not employed on November 9 despite telling Officer Thomas and his partner that he was employed after he was stopped. Again, while the evidence is circumstantial, there is enough for the jury to reasonably conclude that Dontrell Wise possessed with intent to distribute butyryl fentanyl with Jerell Weathersby.

### C. Conspiracy to Possess Heroin, Cocaine, and Cocaine Base with Intent to Distribute It

Dontrell Wise next attacks the credibility of Angel Fenton, Heather Metcalf, and Reba Williams. For all three, he notes that they are criminals with mental health and/or substance abuse issues. This series of arguments is easily dispatched: the jury made their credibility determinations for these three witnesses, and the law requires the Court to defer to them. *Barrett*, 848 F.3d at 534.

Finally, Dontrell Wise then argues that several tangential matters do not support his conviction: testimony regarding the phone number he used, the music video in which he briefly appeared, whether he paid for all the rental cars he used, and whether his parole officer allowed him to travel from Erie, Pennsylvania to Bradford, Pennsylvania. These arguments do nothing more than question the credibility of witnesses or the weight the jury should have assigned to each evidentiary source. The law protects both from being disturbed. *Id.*

Angel Fenton, Heather Metcalf, and Reba Williams all testified to either personally distributing cocaine or cocaine base for Dontrell Wise, purchasing it from him, or observing him attempt to distribute or distribute them. Heather Metcalf also said Dontrell Wise attempted to sell heroin to her, which she declined. All three observed Jerell Weathersby and other individuals assisting Dontrell Wise in his distribution. Finally, their testimony corroborates evidence of Dontrell Wise conspiracy to distribute known controlled substances.

Based on this evidence, a jury could reasonably convict Dontrell Wise on Count 1: he conspired to possess with intent to distribute fentanyl and/or heroin with Brittney Ridgeway, butyryl fentanyl with Jerell Weathersby, and cocaine, cocaine base, and heroin in Bradford, Pennsylvania.

## II. Count 2 – Possession of Butyryl Fentanyl with Intent to Distribute

Count 2 reads as follows:

On or about November 9, 2017, in the Western District of New York, the defendant, DONTRELL R. WISE a/k/a Trell, did knowingly, intentionally, and unlawfully possess with intent to distribute butyryl fentanyl, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

The essential elements of a § 841(a)(1) conviction are (1) knowing (2) possession of a controlled substance (3) with the specific intent to distribute it. *See Gore*, 154 F.3d at 45.

The second element is satisfied by showing either actual or constructive possession. *See United States v. VanHoesen*, 578 F. Supp. 2d 449, 452-53 (N.D.N.Y. 2008). To establish constructive possession, the evidence must show that a defendant "knowingly had the power and intention to exercise dominion and control over" the controlled substance. *United States v. Jones*, 531 F.3d 163, 169 (2d Cir. 2008) (quoting *United States v. Teague*, 93 F.3d 81, 84 (2d Cir. 1996)) (quotation marks omitted). "Mere presence [with] or proximity [to the controlled substance] is . . . insufficient to support a finding of constructive possession." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004). Thus, the evidence must show that a defendant handled the contraband, directed where or how it was moved, or exercised control over it in some other way. *See id.* (concluding that the defendant would not have constructively possessed heroin concealed in a box without evidence that he did more than sit a car containing it); *see also United States v. Samaria*, 239 F.3d 228, 239 (2d Cir. 2001), *abrogated on other grounds*, *United States v. Huezo*, 546 F.3d 174, 180 n. 2 (2d Cir. 2008) (finding that defendant never constructively possessed stolen goods when he rode in a car with them and never handled them or directed their movement).

To prove a violation of aiding and abetting possession of drugs for distribution in violation of 18 U.S.C. § 2, "the government must show that 'the defendant joined the specific venture and

shared in it, and that his efforts contributed to its success.'" *United States v. Gatien*, 18 F. App'x 37, 39 (2d Cir. 2001) (summary order) (quoting *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994)); *see also United States v. Scott*, 892 F.3d 791, 798 (5th Cir. 2018) (quoting *United States v. Salazar*, 958 F.2d 1285, 1292 (5th Cir. 1992)) ("The crime of aiding and abetting occurs when the defendant associates with a criminal venture, purposefully participates in it, and seeks by his actions to make it succeed."). "Importantly, the defendant 'need not have actual or constructive possession of the drugs to be guilty of aiding and abetting possession with intent to distribute.'" *Scott*, 892 F.3d at 798 (quoting *United States v. Williams*, 985 F.2d 749, 753 (5th Cir. 1993)).

Dontrell Wise challenges his conviction on Count 2 by calling attention to the lack of evidence connecting Dontrell Wise to the butyryl fentanyl concealed on Jerell Weathersby's person. He contends there is no evidence to show that Dontrell Wise exercised dominion and control over the butyryl fentanyl, and there is scant evidence from the encounter itself to show he was aiding and abetting Jerell Weathersby in distributing the butyryl fentanyl.

Officer Thomas was the only witness to testify about the November 9 traffic stop. His testimony showed only that Dontrell Wise was in a car with Jerell Weathersby who had butyryl fentanyl on his person. No evidence supports the conclusion that Dontrell Wise handled the butyryl fentanyl or controlled it. Although it could be argued that no reasonable jury could convict Dontrell Wise of possession of butyryl fentanyl with intent to distribute, the Government also charged Dontrell Wise with aiding and abetting the possession of butyryl fentanyl with intent to distribute. Considering the totality of the evidence, a rational jury could have convicted Dontrell Wise of that charge. First, Angel Fenton saw Dontrell Wise and Jerell Weathersby package cocaine and cocaine base for sale in Bradford, Pennsylvania. Her testimony establishes a connection between Dontrell Wise and Jerell Weathersby and a history of drug distribution.

Second, at the November 9 traffic stop, Dontrell Wise and Jerell Weathersby exhibited several behaviors consistent with drug distribution: they each possessed only drugs or cash but not both; Dontrell Wise possessed a large amount of cash; and Jerell Weathersby possessed an amount of butyryl fentanyl consistent with distribution and not personal use. DEA Special Agent Jim McHugh testified that all three behaviors are consistent with drug distribution. Finally, Dontrell Wise and Jerell Weathersby were pulled over again on November 11, 2017, two days after the initial traffic stop. Jerell Weathersby had no drugs on him, but Dontrell Wise had approximately $12,000 on his person. The stop further confirms the partnership between Dontrell Wise and Jerell Weathersby and the behaviors consistent with the intent to distribute.

### III.     Count 3 – Distribution of Fentanyl Causing Death

Count 3 of the Indictment reads as follows:

> Between in or about the middle of November 2017, the exact date being unknown, and on or about November 23, 2017, in the Western District of New York, the defendant, DONTRELL R. WISE a/k/a Trell, did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, a substance containing fentanyl, a Schedule II controlled substance, and the death of [Amanda Jarczyk], a person known to the Grand Jury, resulted from the use of such substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

The essential elements of a § 841(a)(1) conviction are (1) knowing (2) possession of a controlled substance (3) and distribution. *See Gore*, 154 F.3d at 45. The first element is established if the defendant knew he possessed a controlled substance, "even if he did not know which substance it was." *McFadden*, 135 S. Ct. at 2304.

The Court addressed the connection between Dontrell Wise and Amanda Jarczyk's death in its analysis on Count 1. A similar analysis is required here. Consequently, the Court explains Dontrell Wise's argument and then succinctly repeats its conclusions.

Dontrell Wise first argues that there is an insufficient connection between the drugs he gave to Brittney Ridgeway and the baggie containing fentanyl found in the kitchen. Testimony from Brittney Ridgeway demonstrates that Dontrell Wise sold what Brittney Ridgeway thought to be heroin to her on November 21 or 22, and Brittney Ridgeway sold those drugs to Amanda Jarczyk and Stephanie Oquendo on November 23 and 24. Brittney Ridgeway also testified that she packaged the drugs Dontrell Wise sold to her in red-and-white-checkered baggies. An identical baggie was found in the kitchen of 1371 Losson Road and tested positive for fentanyl. The end of Brittney Ridgeway's direct examination provides convincing support to the verdict:

> Q. The what [sic] you believed to be heroin that you sold to Amanda on November 23rd, where did you get that from?
>
> A. Dontrell
>
> Q. The what [sic] you believed to be heroin that you sold to Stephanie on November 24th, where did you get that from?
>
> A. Dontrell

Testing on Amanda Jarczyk's body then determined that a fentanyl overdose caused her death.

Assuming that the jury found Brittney Ridgeway credible, which the Court must do on a Rule 29 motion, her testimony connects drugs Dontrell Wise distributed to Amanda Jarczyk. Direct evidence also confirms that Amanda Jarczyk died from a fentanyl overdose and that the baggie in the kitchen contained fentanyl. Circumstantial evidence—the similarity between the baggies used by Brittney Ridgeway and the baggie in the kitchen, Amanda Jarczyk's lack of transportation, her communications with Brittney Ridgeway, and the temporal proximity of twice receiving Dontrell Wise's drugs and her death—fills the gaps between Dontrell Wise, the fentanyl in the baggie, and the fentanyl that caused Amanda Jarczyk's death. Accordingly, the Court finds

that a reasonable jury could have found Dontrell Wise guilty beyond a reasonable doubt on all three Counts.

## CONCLUSION

For the foregoing reasons, Dontrell Wise's Rule 29 motion, ECF No. 183, is DENIED.

IT IS SO ORDERED.

Dated: March 1, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court